IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christine Foreman,

      Plaintiff,

    v.                   Case No. 2:03-cv-573

Fortis Benefits Insurance
Company, et al.,

      Defendants.


OPINION AND ORDER

    This is an action for payment of long-term disability benefits brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B). Plaintiff Christine Foreman seeks to recover benefits allegedly due under the terms of an insurance policy issued by defendant Fortis Benefits Insurance Company ("Fortis"), the plan administrator, to defendant Thompson Hine & Flory, LLP, ("Thompson Hine"), her former employer. This matter is now before the court on the cross-motions of plaintiff and Fortis for judgment on the administrative record. Defendant Thompson Hine & Flory has filed a memorandum joining in Fortis's memorandum in opposition to plaintiff's motion for judgment and in Fortis's motion to affirm the decision to enter judgment affirming the decision to deny benefits.

Standard of Review

    The standard of review applicable in this case is determined based on the standards announced in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). In that case, the Supreme Court held that a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the more deferential arbitrary and capricious standard of review applies. The standard of de novo review is also applicable to the plan administrator's factual determinations unless the plan explicitly vests fact-finding discretion in the plan administrator. Rowan v. Unum Life Insurance Co. of America, 119 F.3d 433, 435-36 (6th Cir. 1997).

When conducting a de novo review, the court simply decides whether or not it agrees with the decision under review. Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990). Under this standard, the court must take a "fresh look" at the administrative record. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616 (6th Cir. 1998). The de novo standard of review applies to the factual determinations and the legal conclusions of the plan administrator. Id. at 613.

Under the "arbitrary and capricious" standard, a determination will be upheld if it is rational in light of the plan's provisions. Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). When it is possible to offer a reasoned explanation for a plan administrator's decision based upon the evidence, that decision is not arbitrary and capricious. Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). In the specific context of a claim for disability benefits, administrators are not required to accord special weight to the opinions of the plaintiff's treating physician, or to offer an explanation when they credit reliable evidence that conflicts with a treating

2

physician's evaluation.  <u>Black & Decker Disability Plan v. Nord</u>, 538 US. 822, 834 (2003).

Regardless of which standard of review applies, the court is limited to a consideration of the evidence which was included in the record before the plan administrator.  See <u>Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund</u>, 203 F.3d 926, 932 (6th Cir. 2000); <u>Wilkins</u>, 150 F.3d at 616 (<u>de</u> <u>novo</u> review limited to record before plan administrator); <u>Smith</u>, 129 F.3d at 863 (review under "arbitrary and capricious" standard considers only facts known to plan administrator at time of decision).

A finding that discretionary authority has been given to the plan administrator does not depend on the plan's use of the word "discretionary" or any other magic word.  <u>Williams v. International Paper Co.</u>, 227 F.3d 706, 711 (6th Cir. 2000).  Rather, courts must focus on the breadth of the administrator's power in determining whether the plan includes a clear grant of discretion to the administrator to determine eligibility for benefits or to interpret or construe the terms of the plan.  <u>Perez v. Aetna Life Ins. Co.</u>, 150 F.3d 550, 555 (6th Cir. 1998).

The policy in the instant case includes the following language:

> We have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy.  All determinations and interpretations made by us are conclusive and binding on all parties.

Fortis Memorandum Contra, Exhibit C.  The policy also states, "You must furnish whatever items we decide are necessary as proof of loss or to decide our liability."  Record, FB 0033.  Since the

policy contains express language granting discretionary authority to Fortis to determine eligibility for benefits and to interpret plan language, the "arbitrary and capricious" standard of review applies in this case.

Plaintiff argues that Fortis operated under a conflict of interest in determining whether benefits should be paid because Fortis is financially responsible for the payment of benefits, and further argues that the de novo standard of review should therefore apply. In the Sixth Circuit, the fact that a fiduciary has a conflict of interest does not alter the standard of review, but merely constitutes an additional factor which should be taken into account in determining whether the decision was arbitrary and capricious. Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998). Therefore, in applying the arbitrary and capricious standard, the court will consider whether any conflict of interest had any impact on the decision to deny benefits.

Administrative Record

The policy issued to Thompson Hine provided for long-term disability benefits to eligible employees employed for at least one year. Record, FB 0022. To be "disabled" within the meaning of the policy, the employee must satisfy either the Occupation Test or the Earnings Test. Record, FB 0016. Under the Occupation Test, an employee is disabled if "during the first 60 months of a *period of disability* (including the *qualifying period*), an *injury*, or sickness, or pregnancy requires that you be under the *regular care and attendance* of a *doctor*, and prevents you from performing at least one of the *material duties* of your regular occupation[.]" Under the Earnings Test, an employee is considered disabled "in any

4

month in which you are actually working, if an *injury*, sickness, or pregnancy, whether past or present, prevents you from earning more than 80% of your *monthly pay* in that month in any occupation for which your education, training or experience qualifies you." Record, FB 0006, 0016. The term "*qualifying period*" "means the length of time during a *period of disability* that you must be *disabled* before benefits are payable." Record, FB 0019. The qualifying period is twelve months. Record, FB 0023.

Plaintiff began her employment as a paralegal on or about September 29, 1998. She resigned her employment effective September 30, 1999, without giving a reason. Plaintiff completed her Long term Disability Claimant Statement in August of 2000, claiming that she became disabled on September 30, 1999. Record, FB 0206. Under the terms of the policy, plaintiff had to be disabled for the entire qualifying period of twelve months, beginning September 30, 1999, and ending September 29, 2000, in order to receive benefits.

The Attending Physician's Initial Statement of Disability submitted with plaintiff's application was completed by plaintiff's primary care physician, Dr. David McClure, on September 15, 2000. Record, FB 207-08. Dr. McClure stated that plaintiff's medical conditions included chronic low back pain, fibromyalgia, chronic sinus disease, severe asthma, irritable bowel syndrome, and hypertension. In the section for psychiatric impairment, Dr. McClure checked the box for "Class 2 - Patient is able to function in most stress situations and engage in only limited interpersonal relations (*slight limitations*)." He indicated that he was "unsure" what stress and problems in interpersonal relations plaintiff had

on the job.  He stated that there was no limitation in regard to cardiac functional capacity.  Dr. McClure also checked the box indicating that plaintiff had "Class 5" severe physical limitations which rendered her incapable of minimal activity or sedentary work. He noted that plaintiff has difficulty sitting or standing for long periods, but further stated that he had not reviewed plaintiff's job description.  He concluded by stating that he could not see what job plaintiff could do in her present state of disability.

In reviewing plaintiff's claim, Fortis received medical records from Dr. McClure; Dr. David Kelly, an otolaryngologist; Dr. Phillip Hawley, a pulmonologist; and Dr. Sara Finn Kriger, Ph.D., a psychologist.  Dr. McClure's records included records from Dr. Michael McShane, who treated plaintiff for bursitis; Dr. Dennis Calnon, a cardiologist; and Dr. Joseph J. Ruane, a rheumatologist.

Fortis obtained an internal review of plaintiff's medical records by Dr. Robert A. Bischoff, a clinical psychologist. Record, FB 0272.  Dr. Bischoff, reviewed records obtained from plaintiff's treating physicians, including Dr. McClure and Dr. Kriger.  He noted that plaintiff saw Dr. Kriger on two occasions, specifically, on April 10, 1999, and October 21, 1999, complaining of depression.  Dr. Kriger stated that on October 21, 1999, plaintiff was disabled by depression, but that her physical problems exacerbated her mental problems.  Dr. Kriger indicated that plaintiff was unable to concentrate or use her memory effectively due to her depression, but that she was alert and oriented to person, place and time, that she did not have a thought disorder, and that her intellectual ability was intact.

Dr. Bischoff also noted a transcript of a telephonic statement

made by Dr. McClure on November 3, 1999. <u>See</u> Record, FB 1132. In that statement, Dr. McClure stated that plaintiff's medical problems included hypertension, depression, acne, rosia, herpes labyallis, irritable bowel syndrome, severe chronic sinus disease, severe asthma, and chronic law back pain. Dr. McClure stated that plaintiff's asthma had recently "been under fairly decent control," but that her hypertension was difficult to control. He also stated that he felt plaintiff would have difficulty with sitting for long periods of time, but that she should have no trouble with walking, standing, hearing, speaking, or traveling, and that plaintiff's understanding, memory, social interaction and adaptation were normal. Record, FB 1132. Dr. Bischoff also commented on a follow-up note by Dr. McClure dated November 15, 1999, in which he stated that plaintiff's depression was better, as well as another note dated September 15, 2000, in which Dr. McClure indicated that plaintiff stated that she felt better, is more interested in things, and is getting out and doing more things such as shopping.

Dr. Bischoff stated in his report that plaintiff generally had not participated in a consistent plan of mental health treatment, and that her severity level "does not seem to be significant." Record, FB 275. He noted that plaintiff's job was essentially sedentary, and that, from a psychological perspective, "there are no restrictions or limitations indicated." He stated that the diagnosis of severe depression in October of 1999 was based on a standard clinical interview, and was not backed up by cohort report, objective testing, or other sources of information. He noted that Dr. Kriger's observations that plaintiff had symptoms of depression for three to four months was not corroborated by Dr.

McClure's information.  Dr. Bischoff further noted that Dr. McClure commented in November of 1999 that plaintiff's depression was better.  Dr. Bischoff also commented on the fact that plaintiff did not pursue further treatment with Dr. Kriger, which he felt was unusual in the case of a significant depressive episode.  Dr. Bischoff concluded that based on the "limited psychological and psychiatric information in the chart," it did not appear that plaintiff would have been unable to perform her job due to depression as of September 30, 2000, when benefits would have commenced.

Plaintiff's file was also reviewed internally by Dr. Barry D. Turner, a board-certified orthopedic surgeon.  Record, FB 0281. The records reviewed by Dr. Turner included records from Dr. McClure, Dr. Ruane, Dr. Calnon, and Dr. Hawley.  Dr. Turner noted in his report that in a memo dated September 6, 2000, Dr. Hawley stated that plaintiff's asthma was under excellent control.  See Record, FB 0316.  Dr. Turner saw no evidence that plaintiff was disabled as a result of cardiac concerns.  Dr. Calnon's report of December 20, 2000, indicated that plaintiff had risk factors for coronary disease, and that she developed chest pain and equivocal EKG abnormalities during a stress test, but that her nuclear perfusion study was normal in terms of left ventricular systolic function.  Record, FB 0296.  Dr. Calnon stated that plaintiff was unwilling to proceed to catheterization.

Dr. Turner also noted that while plaintiff had a history of sinus problems and surgeries in the past, this would not be a cause for disability.   He commented that plaintiff's degenerative conditions of the spine "are not atypical for persons in her age

range [53 years] and with consideration of her obesity problems [272 pounds]." Record, FB 0282.  Dr. Turner further concluded that plaintiff should be able to control back pain with anti-inflammatory medication.

In regard to Dr. McClure's assessment, Dr. Turner stated:

> Even though [plaintiff] and Dr. McClure note that she has problems sitting for long periods of time, it is observed that she takes long truck trips with her fiancee, and has no problems sitting , and traveling for long periods of time.  Dr. McClure noted that she had no problem traveling.  His statement that she could not sit for long periods of time, but had no problem traveling, represents a gross inconsistency.

Record, FB 0282.  Dr. Turner also found no physical reason or precipitating event which would have caused the onset of plaintiff's disability on September 30, 1999.  Dr. Turner concluded that plaintiff was capable of performing the material duties of her job from a physical standpoint.

The record includes a letter dated May 4, 2000, from Dr. Pedro S. Aguilar, who examined plaintiff for her complaints of irritable bowel syndrome.  This report indicates that although plaintiff was diagnosed in 1990 with multiple colonic diverticulosis, the examination on May 4th was negative for masses and mucosal abnormalities, and showed one residual hemorrhoid.  Dr. Aguilar recommended that plaintiff eat a high fiber diet and return in four years for another examination.  Record, FB 0323.

The record also contains a report dated December 29, 2000, from Dr. Alice T. Epitropoulos, and ophthalmologist who examined plaintiff for discomfort with extra ocular muscle movement, and itching and redness of the eyes.  Record, FB 0292.  Dr. Epitropoulos found that plaintiff's symptoms were consistent with

9

sinusitis, dry eye syndrome and suspect glaucoma. There is no information in this report to indicate that plaintiff would be incapable of performing her job due to eye problems.

By letter dated May 17, 2001, Fortis notified plaintiff that her claim was being denied. Record, FB 0224. The letter states that plaintiff did not meet the definition of disability, and that there was no evidence in her medical records or any precipitating reason to support plaintiff's inability to perform her occupation as a paralegal as of September, 1999. The letter further states that plaintiff's back problems should be controlled by anti-inflammatory medication, and notes that plaintiff had no problem traveling for extended periods of time. The letter concludes that there was no functional evidence that plaintiff would be unable to perform her occupation due to a depressive disorder.

By letter dated May 22, 2001, plaintiff demanded the payment of disability benefits, and submitted a letter from Dr. McClure dated April 27, 2001. Record, FB 0254. In his letter, Dr. McClure stated that plaintiff had suffered from a variety of medical conditions over the years, and that "she still struggles due to her chronic low back pain, sinus disease, and asthma[,]" although "her blood pressure is coming under better control." He also noted that plaintiff "has fibromyalgia syndrome which is difficult to control and makes it impossible to work." Record, FB 0255. Plaintiff also resubmitted the treatment summary of Dr. Kriger dated December 12, 2000, which included plaintiff's office visit on October 21, 1999, for depression. Record, FB 0227-29. Fortis treated these letters as an appeal of its May 17, 2001, denial of benefits.

During the appeals process, Fortis considered the medical

10

records submitted by plaintiff's treating physicians, including Dr. McClure, Dr. Ruane, Dr. Epitropoulos, Dr. Kriger, Dr. Hawley, Dr. Calnon, and Dr. Kelly, as well as plaintiff's pharmacy records. Fortis reviewed the findings of Dr. Turner and Dr. Bischoff. Fortis also engaged an independent physician, Dr. Jeffrey Coe, Clinical Assistant Professor of Occupational Medicine at the University of Illinois-Chicago, who is board certified in occupational medicine, to review the record.

Dr. Coe completed a thorough review of the submitted medical records. In his report dated August 14, 2001, Record, FB 0059, Dr. Coe concluded that plaintiff had a "moderate impairment" based on her chronic pain complaints, clinical findings and test results. However, he noted: 1) that plaintiff's asthma was currently being treated successfully with medication; 2) that her hypertension was coming under better control; 3) that specific documentation of the location of various tender points was not provided; 4) that plaintiff had no severe impairment due to significant neuromuscular deficit; 5) that records of her cardiac evaluation showed no indication of congestive heart failure, and that her heart sounds were normal; 6) that the records failed to indicate that her irritable bowel syndrome was of a severe degree; 7) that plaintiff's chronic sinus disease did not preclude her from working; and 8) that plaintiff's treatment for depression was not well documented.  Record, FB 0061-63.  Dr. Coe indicated that, based on plaintiff's multiple diagnoses, "some work limitation is required" to the sedentary functional level.  Record, FB 0064.  He further stated,

> I see no reason, based upon current medical records, that
> Ms. Foreman would be unable to work an 8-hour day for 30

> hours per week.  Based on the medical records reviewed,
> her condition of asthma is under good control.  In
> addition, her condition of sinus disease has been treated
> surgically.  Her condition of hypertension has been
> controlled medically.  Her condition of chronic pain
> arising from her back and muscles are significant, but
> would not impact her ability to work at a sedentary level
> position.

Record, FB 0064.  Dr. Coe reviewed plaintiff's job description and concluded that her duties as a legal assistant were sedentary and "could be performed in either a seated or standing position, and should allow Ms. Foreman to change positions throughout the course of a work day."  Record, FB 0064.

Dr. Coe was later asked by Fortis to clarify the amount of days or hours within the work week that plaintiff would be able to work.  In an addendum dated October 5, 2001, Dr. Coe stated that he saw no reason why plaintiff would be unable to work a regular full-time work week of eight hours per day, five days per week, forty hours weekly, so long as her work was limited to a sedentary position.  Record, FB 0057.

Fortis also obtained a job description of plaintiff's position from Thompson Hine.  Record, FB 00146-47.  Plaintiff's position as a legal assistant in personal succession planning involved meeting with various individuals to determine assets for estate planning purposes, valuing assets manually or by computer, maintaining estate accounts on behalf of fiduciaries, contacting courts for processing filings, maintaining contact with trustees, reviewing and preparing accountings, and drafting tax returns, estate plan documents and court filings.  Thompson Hine also indicated that a paralegal has a secretary, that the paralegal could get up intermittently and move around, and that Thompson Hine tries to

12

accommodate any needs their employees may have.  Record, FB 0221.

By letter dated October 30, 2001, plaintiff was advised by Scott Uptgraft, Disability Appeals Specialist, that the denial of benefits was being upheld because Fortis had concluded that plaintiff was not disabled long enough to satisfy the qualifying period of twelve months.  Record, FB 0048.  Upon its review of the record, Fortis determined that plaintiff ceased work on September 30, 1999, but that she had recovered sufficiently to resume working her regular occupation at least by the end of November, 1999.  Fortis reviewed the job requirements of plaintiff's position as a paralegal, and noted that this position most closely resembled sedentary work and permitted plaintiff to change positions intermittently.  Fortis concluded from the records that plaintiff's psychiatric condition "had clearly improved by November 1999, as evidenced in the available records, and by [plaintiff's] lack of follow-up with Dr. Kriger."  Record, FB 0049.  After summarizing the findings of Drs. Turner, Bischoff, and Coe, the letter informed plaintiff that, notwithstanding the physical conditions mentioned in Dr. McClure's letter of April 27, 2001, the evidence "does not support limitations that would have prevented you from performing the material duties of your regular occupation (and satisfying the Occupation Test) from the claimed onset of disability of September 30, 1999 throughout the entire 12-month Qualifying Period."  Record, FB 0049-50.

By letter to Mr. Uptgraft dated November 18, 2001, plaintiff stated that she intended to appeal the decision of October 30, 2001.  Record, FB 0044.  On March 22, 2002, plaintiff's attorney sent a letter to Mr. Uptgraft inquiring about the appeal.  Record,

FB 0043.  In response, Mr. Uptgraft sent counsel a letter dated March 28, 2002, noting that Fortis had received no correspondence from plaintiff since her letter of November 18th, and that plaintiff had one level of appeal left within the internal appeals process. Record, FB 0042.

By cover letter dated June 10, 2002, plaintiff's counsel forwarded a letter written by plaintiff in support of her claim, as well as medical records.  Record, FB 0972.  Some of these records had previously been submitted to Fortis, and others were more recent.  These documents included a letter from Linda N. Lee, LISW, who had known plaintiff for twenty years but did not treat her professionally.  Record, FB 0987.  Plaintiff also submitted additional records from Dr. Kriger dated January 2, 2002.  Dr. Kriger had not seen plaintiff between that date and October 21, 1999.  Record, FB 0969.  Dr. Kriger's notes for plaintiff's office visit of January 2, 2002, stated that plaintiff had poor memory and obsessions, that her sleep was disturbed, and that she was depressed, but that her affect was appropriate, that her insight was good or average, that her speech was coherent, and that she had no thought disorder.  Record, FB 0992.  Dr. Kriger's notes for January 16, 2002, state that plaintiff had started exercising and that she was doing better.  Record, FB 0993.

Also submitted was a letter from Dr. McClure dated January 15, 2002.  Record, FB 0995.  Dr. McClure again listed plaintiff's various medical problems and stated that although her hypertension and asthma "have improved considerably," he continues to refer her to specialists for treatment.  He reiterated his opinion that plaintiff's medical problems prevented her from being able to work

14

from September, 1999, through the present.

The record includes a report of an examination of plaintiff for fibromyalgia symptoms by Dr. Mary Ann Everhart-McDonald on April 10, 2002, Record FB 0998; a letter from plaintiff to Dr. Ruane dated March 14, 2002, describing her leg pains, Record FB 1000; treatment records from Dr. Ruane; the results of an EMG examination dated October 26, 2001, by Dr. Jeffrey A. Strakowski, Department of Physical Medicine and Rehabilitation, showing no abnormalities; treatment notes from Dr. McClure; and a memo to Dr. Ruane from Mary Beth Froehlich, a physical therapist, dated January 17, 2001, describing a treatment plan for plaintiff's fibromyalgia, Record FB 1051 (plaintiff later stopped this course of treatment, as reflected in a letter dated March 8, 2001, <u>see</u> Record FB 1044).

Fortis also had a report from Dr. John A. Rumberger, concerning a heart and coronary calcium scanning report conducted on January 4, 2001, which suggested a moderate likelihood of a flow limiting stenosis calling for further testing. Record FB 1060. A chest CT conducted on January 4, 2001 by Dr. Martha A. Brogan was negative. Record, FB 1063. A thorax scan evaluated by Dr. Joseph Schultz was normal. Record, FB 1064.

Counsel was advised by a letter from Mr. Uptgraft dated June 24, 2002, that the appeals committee would be reviewing plaintiff's claim on July 18, 2002.

In a letter dated July 22, 2002, plaintiff's counsel was notified that Fortis's appeals committee had reviewed plaintiff's record, and that the committee upheld the October 30, 2001, denial of benefits on July 18, 2002. Record, FB 0936-38. The appeals committee was comprised of five individuals, including J.D.

15

Beavers, M.D. and Pat Neubauer, Ph.D.  Record, FB 0966.  The letter indicates that the appeals committee reviewed plaintiff's file in its entirety, including the medical records forwarded by counsel on appeal.  The letter  incorporates the reasons for denial of the claim stated in the October 30, 2001, letter, and further states that the appeals committee noted "that there were no new abnormalities on objective testing ... nor objective clinical findings that would correlate with Ms. Foreman's ongoing complaints of low back pain."  Record, FB 0937.  The appeals committed also commented that plaintiff had received "what would be considered minimal psychiatric treatment/counseling regarding her reported depressive symptoms" and concluded that "the records do not document a condition that would substantiate limitations of a severity that she would be unable to perform her regular occupation."  Record, FB 0937.  The committee concluded that while plaintiff may have been briefly prevented from performing her regular occupation as a paralegal, she did not satisfy the Occupation Test for the entire twelve-month qualifying period, and therefore no benefits were payable.  Record, FB 0937.

Following the final denial of her appeal, plaintiff filed the instant action.

Review of Decision of Plan Administrator

Plaintiff claimed that she was disabled by degenerative disk disease, high blood pressure, fibromyalgia, chronic sinusitis, severe asthma, irritable bowel syndrome, bursitis and depression. Fortis does not dispute that plaintiff has suffered from and received treatment for these conditions.  The issue is whether Fortis could reasonably conclude from the information in its

16

possession that plaintiff was not prevented by any one or combination of these conditions from performing her job of paralegal during the entire twelve-month period from September 30, 1999 to September 29, 2000. After a thorough review of medical records from plaintiff's treating physicians and reports from its own experts and an independent expert, Fortis concluded that there was no evidence that plaintiff's physical problems rendered her disabled and incapable of performing her job during that period. That conclusion is reasonably supported by evidence in the record.

For example, Fortis considered the opinion of Dr. Turner, who indicated that plaintiff's degenerative disk disease was not atypical for her age and weight. Record, FB 0282. There is no information in plaintiff's medical records to indicate that plaintiff was incapable of performing her job due to this condition. In regard to plaintiff's hypertension, the record includes a letter from Dr. McClure dated April 27, 2001, in which he states that plaintiff's hypertension was under better control. Record, FB 0255. There is no information in plaintiff's medical records which would support a finding that plaintiff's blood pressure problems were so out of control, even with medication, that this condition interfered with the performance of her job.

There is also no evidence that plaintiff suffered from fibromyalgia to such a degree that she was rendered disabled during the entire relevant twelve-month period, particularly since plaintiff's position was basically sedentary, and enabled her to get up and move around when needed, and her employer indicated a willingness to accommodate her needs. Plaintiff took prescription medication for this condition, and Dr. Ruane stated in a report

17

dated December 27, 2000, that plaintiff's fibromyalgia was helped by medication and massage.  Record, FB 0293.

Although plaintiff has chronic sinusitis and has had sinus surgery in the past, Dr. Turner concluded that this condition did not prevent plaintiff from working as a paralegal.  Record, FB 0091.  A letter from Dr. Hawley dated September 6, 2000, stated that plaintiff's asthma was under excellent control.  Record, FB 316.  A memorandum dated February 19, 1999, from Dr. Michael A. McShane, an orthopedist who treated plaintiff for bursitis, indicates that he evaluated plaintiff for bursitis of the hip, and that he prescribed medication, but plaintiff declined therapy. Record, FB 0546.  In a memorandum dated May 7, 1999, Dr. McShane stated that plaintiff's hips were "much better" and that plaintiff had a normal range of motion in both hips.  Record, FB 0366.  The report of Dr. Aguilar dated May 4, 2000, reveals no significant gastrointestinal problem, and he instructs plaintiff to return for a follow-up examination in four years.  Record, FB 0323.

Finally, although Dr. Kriger felt that plaintiff was disabled by depression as of October 21, 1999, plaintiff did not seek any additional psychological treatment after that episode until January of 2002.  Record, FB 0231.  Plaintiff herself acknowledged in a telephone conversation on March 19, 2001, that she had not seen Dr. Kriger for quite some time and that she only went to see her when she needed to.  Record, FB 0280, 0969.  Dr. McClure stated on November 3, 1999, that plaintiff's understanding, memory, social interaction and adaptation were normal, and that she had sustained concentration and persistence.  Record, FB 0336.  Dr. Kriger next saw plaintiff on January 2, 2002, well after the twelve-month

18

qualifying period. Even that subsequent bout of depression was apparently short-lived, since Dr. Kriger indicated that plaintiff was doing better when she saw her on January 16, 2002. There is no evidence of any consultations with Dr. Kriger after that date.

Plaintiff argues that Fortis should have accorded more weight to the opinions of plaintiff's treating physicians concerning her disabilities. However, the plan administrator is not required to accord special weight to the opinions of a claimant's physician. Nord, 538 U.S. at 834. Further, the record demonstrates that Fortis's decision to reject the opinions of Dr. Kriger and Dr. McClure that plaintiff was disabled was not arbitrary or unreasonable. As noted above, Dr. Kriger found that plaintiff was disabled by depression as of October 21, 1999, but did not see plaintiff again within the year. Dr. Bischoff noted that this lack of follow-up care was inconsistent with a major depressive episode. Dr. McClure, plaintiff's primary care physician, offered the opinion that plaintiff was disabled, but stated that he was unaware of plaintiff's job description. Although he concluded that plaintiff could not sit or stand for long periods of time, he placed no restrictions on her ability to travel. In fact, plaintiff was able to travel to Florida in her boyfriend's eighteen-wheeler truck. In contrast, Dr. Turner, an orthopedic surgeon, and Dr. Coe, a specialist in occupational medicine, concluded that plaintiff was not disabled. Fortis did not act in an arbitrary and capricious manner in according more weight to the opinions of the experts who reviewed plaintiff's records.

Plaintiff also argues that the fact that Dr. Coe was asked to clarify his opinion warrants reversal of Fortis's decision, citing

19

McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161 (6th Cir. 2003).  In that case, the physician offered an extremely equivocal opinion, but after a phone conference with members of the defendant's appeal committee, the physician gave an opinion that more strongly supported the denial of benefits.  Id. at 169-71. Here, Dr. Coe's initial opinion clearly indicated a finding that plaintiff was not disabled.  The only discrepancy between the opinion and the addendum is that the initial opinion indicated that plaintiff could work thirty hours per week, whereas the addendum stated that plaintiff could work forty hours per week.  There is no evidence that Dr. Coe was in any way persuaded or coerced by Fortis to change his report; in fact, the earlier discrepancy may have even been the result of typographical error.

Fortis's decision to deny benefits was also not rendered arbitrary and capricious by the fact that plaintiff was awarded disability benefits by the Social Security Administration based upon her mental condition of depression.  An administrator of an ERISA plan is not bound by a disability determination made by the Social Security Administration.  Hurse v. Hartford Life & Accident Ins. co., No. 02-5496 (unreported), 2003 WL 22233532 (6th Cir. Sept. 26, 2003)(determination of Social Security Administration need not be the only reasonable conclusion that the evidence could support); Conley v. Pitney Bowes, 176 F.3d 1044, 1049-50 (8th Cir. 1999)("We see no reason to import wholesale, into what is essentially a private-law area, special rules developed for reviewing the decisions of administrative agencies.").  The determination of the Social Security Administration was based on plaintiff's mental condition alone, whereas Fortis was faced with a disability claim

based on a variety of alleged physical problems.  It has not been shown that the Fortis policy was governed by the same standards applicable to social security benefits, nor is it clear that the Social Security Administration had the same evidence before it. Finally, in light of Dr. Bischoff's observations concerning the problems inherent in relying on Dr. Kriger's opinion, including the lack of underlying objective tests and the fact that plaintiff sought no further treatment for over two years, the fact that Fortis arrived at a different conclusion than the Social Security Administration based on the evidence does not render its determination on the question of plaintiff's mental disability arbitrary or unreasonable.

There is no indication in the record that the decision to deny benefits was arbitrary and capricious by reason of any inherent conflict of interest on the part of Fortis as plan administrator and benefit provider.  The plaintiff must provide some specific evidence suggesting that Fortis acted in bad faith.  See Peruzzi, 137 F.3d at 433 (where the record contained no significant evidence that the plan's administrator based its determination on costs or otherwise acted in bad faith, court could not conclude that defendant was motivated by self interest).  No evidence of bad faith has been produced in this case.

As previously noted, under the "arbitrary and capricious" standard, a determination will be upheld if it is rational in light of the plan's provisions, Smith, 129 F.3d at 863, or when it is possible to offer a reasoned explanation for a plan administrator's decision based upon the evidence.  Davis, 887 F.2d at 693.  The decision of Fortis meets these requirements, and the denial of

21

benefits was not arbitrary and capricious.  The court further notes that even if the <u>de</u> <u>novo</u> standard of review is applied in this case, this court would agree with the decision of the administrator.  Defendants are entitled to judgment on the administrative record.

<u>Conclusion</u>

In accordance with the foregoing, plaintiff's motion (Docs. ## 14 and 26) for judgment on the administrative record as a matter of law are denied.  The motion of Fortis (Doc. # 21) for judgment on the administrative record, joined in by Thompson Hine and Flory, is granted.  The clerk shall enter judgment in favor of the defendants on the administrative record.

Date: August 10, 2005          _____s\James L. Graham_____
                               James L. Graham
                               United States District Judge

22